## Ellis *v.* Mosier.

A contract by which E agrees to purchase for M at the United States land office, a portion of public land, upon which M has made valuable improvements, is not repugnant to the act of Congress passed in 1830, to pre-

vent fraudulent practices at the public sales of the lands of the United States.

Where an agreement is not calculated to prejudice the price and sale of the public lands, it is not affected by the law of 1830.

Agreements in relation to improvements and claims on the public lands, are recognized by the laws, courts and customs of Iowa.

*In Equity. Appeal from Mahaska District Court.*

*Opinion by* GREENE, J. Enoch Mosier filed his bill in chancery, for the specific performance of a contract made for improvements on public land. It appears, that Mosier had a claim and valuable improvements, on half a section of land belonging to the United States, and made a bargain with Julian Ellis by which he sold him one half thereof, and as the land on division could not be purchased in the name of each of the parties at the public sales, it was agreed that Ellis should purchase the land and take the certificate of purchase in his own name, and thereupon deed to the complainant his half of the land. It also appears, that the complainant furnished his share of the means for the purchase, in the claim, which was valued by the parties at $400; that the defendant offered to pay to the complainant the purchase money, for the half of the claim he had purchased, but the complainant intrusted the keeping of it to the defendant, under his promise to act as his agent in applying it to the purchase of the land in question. A written agreement under seal, was accordingly entered into between the parties, on the 22nd of June, 1846, which witnesseth: "That Enoch Mosier hereby agrees to permit Julian Ellis, to enter at the coming land sales his entire claim, situated in Mahaska county, Iowa territroy, consisting of one hundred and sixty acres of prairie, and one quarter of timber, on the following conditions, which Julian Ellis binds himself by these presents, in the penalty of one thousand dollars to perform, Julian Ellis to furnish $400, to enter the claim all in his own name, and then so soon as he can obtain a certificate from the land office, to deed to said Mosier the north half

of the quarter section of prairie, and eighty acres of the timber, consisting of that part of the quarter section which the said Mosier shall select," &c. A particular description of the land is set forth in the bill, and also an averment that the complainant selected the west half of the quarter section of timber referred to in the agreement, and gave written notice of such selection to the defendant. The defendant, it appears, entered the land accordingly, obtained for it a certificate, and subsequently a patent from the President of the United States; and that both parties entered upon their respective portions of the land, and each continued in possession by the consent and acquiescence of the other; that the complainant has greatly enhanced the value of his portion of the land by valuable improvements; and that he has often applied to the defendant for a performance specifically of his agreement, by conveying the land in question, but that he had wholly neglected and refused so to do.

The defendant demurred to the bill, which was overruled; having failed to plead or answer as required by rule of court, he was considered in default. By the decree, it was adjudged, that the respondent make and deliver to the complainant, a good and sufficient warranty deed of the real estate set forth in the bill, within thirty days from the adjournment of that court, and that in default thereof, the real estate in question should be vested in the complainant by virtue of the decree, which should be treated as a conveyance.

It is now urged, that the court should have sustained the demurrer to the bill on the ground, that the agreement between the complainant and respondent was founded upon an unlawful consideration, and was therefore void. To show the illegal character of the contract, the respondent refers to the 4th and 5th sections of an act of Congress, "for the relief of the purchasers of the public lands, and for the suppression of fraudulent practices at the public sales of the lands of the United States," approved, March 31, 1830. The 4th section referred to, provides a

Ellis *v.* Mosier.

penalty against any person, who "shall, before or at the time of the public sale of any of the lands of the United States, bargain, contract or agree with any other person, that the last named person shall not bid upon or purchase the land so offered for sale, or any parcel thereof; or shall by intimidation, combination or unfair management hinder or prevent, or attempt to hinder or prevent any person from bidding upon or purchasing any tract of land so offered for sale." The 5th section provides that all agreements before or at the public sale, " to purchase such land, to pay or give to such purchasers for such land, a sum of money, or other article of property, over and above the price at which the land may or shall be bid off by such purchasers," shall be null and void.

The question arises, does the contract between the parties in this case, come within the object and meaning of the law, above referred to. The prevailing object of the law clearly is, to prevent agreements and combinations prejudicial to the price and sale of the public lands; and to promote that object, the 4th section renders it a penal offence to make any bargain or combination to prevent bidding upon government lands offered at public sales; and the 5th section declares all contracts and agreements void which tend to preclude such bids. Is there any thing in the arrangement and contract between these parties, which can implicate them as violating these regulations of Congress, or render the contract they entered into void? We think not. It was a legitimate transaction, recognized by the prevailing customs of the West, sanctioned by the laws of our state, and by the decisions of our courts.

Mosier had a claim and valuable improvements on the public lands, and for one half of the claim, Ellis engaged to pay him two hundred dollars. Mosier intrusted the two hundred dollars with Ellis, as agent, to purchase for him his remaining portion of the land at the public sales, with the understanding, that Ellis should deed to Mosier his portion of the purchase, upon its being perfected. Here

was no agreement as contemplated by the 5th section referred to, by which the purchaser of the land at the sales, was to receive "a sum of money or other article of property, over and above the price" bid by the purchaser. We can only recognize it as a contract by which Ellis agreed to pay Mosier for improvements, and as a consideration therefor give him two hundred dollars, which he was to pay, by purchasing for him at the public sales, the quarter section of land in controversy. So far from discouraging or prejudicing the sale of the public domain, it was throughout, a transaction by which the value was enhanced, and the sale secured. The improvements not only gave value to and promoted the sale of the land, for the government, but also enhanced the value and would necessarily promote the sale of the adjacent lands. It cannot then be successfully urged, that the improvements upon, or the contract in relation to the land described in complainant's bill, either abated the price or retarded the sale of government lands; nor can we see why the contract should be regarded as a nullity, under the sections of the act we have cited. We regard it as an agreement entirely removed from the objectionable conditions which are condemned by that law.

The principle that improvements and a claim on public lands, constitute a valid consideration, in bargains relating to and founded upon them, has been repeat edly recog nized by our territorial supreme court. Morris' Iowa R., *Hill* v. *Smith, et al.* 70; *Freeman* v. *Holliday*, 80; *Stannard* v. *M'Carly*, 120; *Starr* v. *Wilson*, 438.

We are unable to see any feature of equity or good conscience, in the objections raised by the respondent to the decree of the district court. Indeed, all the circumstances of the case, the fiduciary capacity which respondent assumed, and in which he acted, the manner in which he recognized the occupancy, possession, and improvements of the complainant subsequent to the purchase of the real estate, present a forcible appeal in contemplation of equity

jurisprudence, in support of the justice and correctness of the decree.

Decree affirmed.

*J. C. Hall* and *W. H. Seevers*, for appellant.

*Wright & Knapp*, for appellee.